IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MGH COMMUNITY HEALTH, INC., d/b/a
MGH HOME HEALTH,
18109 Prince Philip Drive, Suite 325
Olney, Maryland  20832,

        Plaintiff,

        v.

MICHAEL O. LEAVITT, Secretary,
Department of Health and Human Services
200 Independence Avenue, SW
Room 615F
Washington, DC 20202,

Serve:

1. U.S. Attorney for the District of Columbia

2. The Attorney General of the United States
   U.S. Department of Justice
   950 Pennsylvania Avenue NW
   Washington, DC 20530-0001

3. Secretary of Health and Human Services
   c/o Office of the General Counsel
   Room 722A
   Hubert H. Humphrey Building
   200 Independence Avenue, S.W.
   Washington, D.C. 20201

        Defendant.

Case Number: _____

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
AND FOR SUMS DUE UNDER THE MEDICARE ACT**

    MGH Community Health, Inc., d/b/a MGH Home Health, by counsel and for its

Complaint, states as follows:

## I.    INTRODUCTION

1.       In accordance with 42 U.S.C. § 1395oo(f), Plaintiff brings this action for review

of the final determination of the Secretary of the United States Department of Health and Human

Services (the "Secretary" and "HHS") denying Medicare reimbursement that it is owed.

2.       Specifically, during the Medicare cost reporting periods at issue in this appeal, the

fiscal years ending ("FYEs") June 30, 1996, and June 30, 1997, Plaintiff operated a home health

agency that participated as a provider of services in the federal Medicare program established

under Title XVIII of the Social Security Act (the "Medicare Act").  During the periods at issue,

Medicare reimbursed home health agencies for the reasonable costs incurred to furnish

Medicare-covered services to Medicare beneficiaries.  The Secretary upheld disallowances, for

Medicare reimbursement purposes, of costs incurred by Plaintiff during these FYEs to furnish

physical therapy ("PT") services to patients using employed physical therapists. The disputed

adjustments disallowed the portions of Plaintiff's PT costs that exceeded the Salary Equivalency

Guidelines ("Guidelines") used by HHS to limit PT payments made by providers furnishing such

services "under arrangement" with outside contractors.

3.       In the administrative proceedings below, the parties agreed to a hearing on the

record before the Provider Reimbursement Review Board (the "PRRB" or "Board").

4.       The PRRB, an administrative body composed of members who are

"knowledgeable in the field of payment of providers of services" and established by law to

adjudicate this dispute, 42 U.S.C. § 1395oo(h), unanimously reversed the PT cost disallowances

that were imposed upon Plaintiff.  *MGH Home Health v. BlueCross BlueShield

Association/Cahaba Government Benefit Administrators*, PRRB Hearing Dec. No. 2006-D25

(June 1, 2006), *reported in* Medicare and Medicaid Guide (CCH) ¶ 81,532.  The PRRB found

that the Guidelines during the periods at issue only applied to "under arrangement" services with outside contractors, not to employed physical therapists even when such employees are paid a portion of their compensation on a fee-for-service basis. The PRRB further concluded that the Medicare Fiscal Intermediary ("Intermediary") could not utilize the Guidelines in place of a prudent buyer analysis to determine whether the Providers' costs for these services were "substantially out of line" when compared to the costs incurred by similarly situated providers for similar services. Stated somewhat differently, the Intermediary had not demonstrated that the disallowed costs were unreasonable. The PRRB's decision was entirely consistent with numerous prior PRRB decisions, stretching back to 1988, on this same issue.  It was also consistent with all of the judicial decisions on this same issue.

5.    The Secretary, acting through his delegate, the Deputy Administrator of the Centers for Medicare and Medicaid Services ("CMS"), reversed the PRRB and, thereby, upheld the Intermediary's disallowances.    *MGH Home Health v. BlueCross BlueShield Association/Cahaba Government Benefit Administrators*, CMS Administrator Dec. (July 11, 2006).   The Deputy Administrator reasoned that, although 42 U.S.C. § 1395x(v)(5)(A) only authorizes Guidelines for PT services "under arrangement" rather than pursuant to employment relationships, such Guidelines may lawfully be applied to employees if they receive fee-for-service compensation. The Deputy Administrator also asserted that this interpretation was consistent with Section 1403 of the Provider Reimbursement Manual ("PRM"), which subjects employed physical therapists' compensation to the Guidelines if any part of the compensation is predicated on a fee-for-services, percentage of income, or commission basis. The Deputy Administrator reached this conclusion even though Section 1403 and the PRM were not adopted in accordance with the notice and comment rulemaking procedures of the Administrative

3

Procedure Act ("APA"), 5 U.S.C. § 553, and do not have the force and effect of law. The Deputy Administrator further claimed that the Secretary's interpretation was supported by 42 C.F.R. § 413.106(c)(5), which applies the Guidelines to employed physical therapists' compensation based, at least in part, on fee-for-service, percentage of income, or commission factors. Although this particular provision was only effective on April 10, 1998 (after the cost reporting periods at issue here), the Deputy Administrator argued that it was merely a clarification of longstanding policy. The Deputy Administrator ignored and failed to cite or reference: (a) various judicial authorities, which have unanimously and consistently invalidated the Secretary's interpretation and (b) the fact that the Secretary has settled cases favorably to providers when this same issue has been presented for judicial review.

6.      The Secretary's final decision is clearly contrary to the Medicare Act and implementing regulations, arbitrary and capricious, not based upon substantial evidence, and otherwise contrary to law.  Accordingly, Plaintiff seeks a declaration reversing the Secretary's decision and an order compelling the Secretary to reimburse it for the actual costs incurred to furnish PT services to its patients, plus interest, legal fees, and costs of suit.

## II.      JURISDICTION AND VENUE

7.      This action arises under the Medicare Act, 42 U.S.C. § 1395 *et seq.* and the APA, 5 U.S.C. § 551 *et seq.*

8.      This Court has jurisdiction under 42 U.S.C. § 139500(f).

9.      Venue lies in this judicial district pursuant to 42 U.S.C. § 139500(f)(1).

## III.      PARTIES

10.      During its FYEs June 30, 1996 and June 30, 1997, Plaintiff MGH Home Health ("MGH") operated a home health agency that was certified to participate in the Medicare

program (Provider No. 21-7118).  Plaintiff was located at 18109 Prince Philip Drive, Suite 325, Olney, Maryland 20832, and provided services to Medicare beneficiaries in the Montgomery County area of Maryland.

11.    Defendant, Michael O. Leavitt, is the Secretary of HHS, the federal agency responsible for administration of the Medicare program.

## IV.    GENERAL STATUTORY AND REGULATORY BACKGROUND

A.    Medicare Reasonable Cost Reimbursement For PT Services

12.    The Medicare Act provides for various health insurance programs covering the aged and disabled. Part A of the Medicare Act provides -- and during the periods at issue here provided -- for hospital insurance benefits that cover "home health services" for individuals confined to their homes, under the care of physicians, and receiving services under plans of care established and periodically reviewed by a physician. Such individuals must be in need of skilled nursing care on an intermittent basis or must require PT or speech-language pathology or must have a continuing need for occupational therapy. 42 U.S.C. §§ 1395f(a)(2)(C) and 1395x(m).

13.    During the periods at issue, the Medicare Act mandated payment for PT services furnished to patients, either directly by the home health agency or by others under arrangements with the home health agency, and directed that the payment would be the lower of the home health agency's customary charges for the services or its "reasonable cost" for the services "as determined under section 1395x(v)." 42 U.S.C. §§ 1395f(b)(1) and 1395l(a)(2)(A)(i) and (ii) (1996).

14.    Section 1395x(v) of the Medicare Act defines "reasonable cost." As originally enacted in the Social Security Amendments of 1965, Section 1395x(v)(1)(A) provided that: "[t]he reasonable cost of any services shall be determined in accordance with regulations

establishing the method or methods to be used, and the items to be included, in determining such costs. . . ." Pub. L. No. 89-97, § 102(a). That provision for payment of reasonable cost is "intended to meet the actual costs, however widely they may vary from one institution to another, except where a particular institution's costs are found to be substantially out of line with those of institutions similar in size, scope of services, utilization, and other relevant factors." S. Rep. No. 404, 89th Cong., 1st Sess. (1965), *reprinted in* 1965 U.S.C.C.A.N. 1943, 1976. The governing statute also requires that Medicare's "reasonable cost" regulations must ensure that Medicare reimburses the costs attributable to its beneficiaries and that the program neither bears the costs of non-Medicare patients nor shifts its costs onto those patients. 42 U.S.C. § 1395x(v)(1)(A)(i).

15.    The Medicare regulation implementing the statutory definition of "reasonable cost" was promulgated in 1966 and codified at that time at 20 C.F.R. § 405.451. 31 Fed. Reg. 14,808, 14,816-17 (Nov. 22, 1966). The regulation is now codified at 42 C.F.R. § 413.9.

16.    The "reasonable cost" regulation has always provided: "[r]easonable cost includes all necessary and proper costs incurred in rendering the services [furnished to Medicare beneficiaries]." 31 Fed. Reg. 14,816; 42 C.F.R. § 413.9(a) (1997). The regulation has always defined "necessary and proper costs" to mean "costs which are appropriate and helpful in developing and maintaining the operation of patient care facilities and activities," and has always provided that necessary and proper costs "are usually costs which are common and accepted occurrences in the field of the provider's activity." 31 Fed. Reg. 14,817; 42 C.F.R. § 413.9(b)(2) (1997). Likewise, the "reasonable cost" regulation precludes Medicare from either shifting the costs of its beneficiaries to non-Medicare patients or bearing the costs of non-Medicare patients. 42 C.F.R. § 413.5(a).

17.    With respect to payment for the reasonable cost of services, the regulation adopted virtually verbatim the above-quoted language describing the intent of the statutory provision for payment of reasonable costs in the legislative history of Section 1395x(v) of the Medicare Act. The 1966 version of the regulation provided:

> (2) The costs of providers' services vary from one provider to another and the variations generally reflect differences in scope of services and intensity of care. The provision in title XVIII of the Act for payment of reasonable cost of services is intended to meet the actual costs, however widely they may vary from one institution to another. This is subject to a limitation where a particular institution's costs are found to be substantially out of line with other institutions in the same area which are similar in size, scope of services, utilization, and other relevant factors.

> (3) The determination of reasonable cost of services must be based on cost related to the care of beneficiaries of title XVIII of the Act. Reasonable cost includes all necessary and proper expenses incurred in rendering services.... The reasonable cost basis of reimbursement contemplates that the providers of services would be reimbursed the actual costs of providing quality care however widely the actual costs may vary from provider to provider and from time to time for the same provider.

31 Fed. Reg. 14,817 (emphasis added). The language quoted above has remained virtually unchanged from 1966 to the present. *See* 42 C.F.R. § 413.9(c)(2)-(3) (1997).

18.    In February, 1969, HHS published Section 2102.1 of the PRM. The 1969 version of PRM, § 2102.1 reiterated the statutory mandate that reasonable costs shall be "determined in accordance with regulations establishing the method or methods to be used, and the items to be included."

19.    The PRM was amended in November 1971. The 1971 revision noted an "expectation that the provider seeks to minimize its costs and that its actual costs do not exceed what a prudent and cost-conscious buyer pays for a given item or service." *Id.*

20.    In 1972, Congress amended the Medicare Act. Social Security Amendments of 1972, Pub. L. No. 92-603, 86 Stat. 1329 (the "1972 Amendments"). Among other things, the 1972 Amendments authorized the Secretary to adopt regulations to limit the reasonable costs incurred by providers to obtain therapy services from outside contractors to the salary and fringe benefits cost that would be incurred by a provider to furnish the services through employees plus travel and other reasonable expenses incurred by an outside contractor. 1972 Amendments, § 251(c).

21.    Section 251(c) of the 1972 Amendments enacted 42 U.S.C. § 1395x(v)(5)(A), which, as noted above, authorized the Secretary to adopt regulations limiting the reasonable costs incurred by providers to obtain therapy services from outside contractors to the salary and fringe benefits cost that would be incurred by a provider to furnish the services through employees, plus travel and other reasonable expenses incurred by an outside contractor. In 1975, the Secretary adopted regulations implementing the authority to establish those salary equivalency limits on therapy costs related to the use of outside contractors. 40 Fed. Reg. 5,760 (Feb. 7, 1975). The Secretary's salary equivalency regulations are now codified in 42 C.F.R. § 413.106.

22.    The Secretary's salary equivalency regulations do not establish salary equivalency limits for any type of therapy service. 42 C.F.R. § 413.106. Rather, the regulations prescribe a process by which salary equivalency guidelines may be established by the Secretary for a particular type of therapy service. *Id.* Among other things, the regulations require the Secretary to approve and provide advance notice of separate salary equivalency guidelines for each type of therapy service. 42 C.F.R. §§ 413.106(c)(1) and (c)(5). The regulations also require publication in the Federal Register prior to the application of salary equivalency guidelines for a particular type of therapy service. 42 C.F.R. § 413.106(d).

23.    When the Secretary originally issued salary equivalency limits for PT services, the preamble stated that they were confined to "under arrangement" services by "outside contractors" rather than services provided pursuant to employment relationships. 40 Fed. Reg. 5,760 (Feb. 7, 1975). This limitation was consistent with the language of 42 U.S.C. § 1395x(v)(5)(A) and 42 C.F.R. § 413.106(a), which was similarly restrictive. The same limitation was also reiterated when HHS revised the Guidelines. *E.g.*, 48 Fed. Reg. 44,922 (Sept. 30, 1983).

24.    In Transmittal No. 178 (June 1977), however, HHS amended Section 1403 ("Guideline Application") of the PRM to include the following language:

> The guidelines apply only to the costs of services performed by outside suppliers, not to the salaries of providers' employees. However, the costs of the services of a salaried employee who was formerly an outside supplier of therapy or other services, or any new salaried employment relationships, will be closely scrutinized to determine if an employment situation is being used to circumvent the guidelines. Any costs in excess of an amount based on the going rate for salaried employee therapists must be fully justified.
>
> In situations where compensation, at least in part, is based on a fee-for-service or on a percentage of income (or commission), these arrangements will be considered nonsalary arrangements, and the entire compensation will be subject to the guidelines in this chapter.

This extension of HHS's policy to cover employed therapists contravened the plain language of the governing statute and regulation. Moreover, neither Transmittal No. 178 nor PRM, § 1403 were subjected to notice and comment rulemaking pursuant to the APA.

25.    In 1998, the Secretary amended 42 C.F.R. § 413.106 specifically to have it apply to employment relationships in the same circumstances as enumerated in PRM, § 1403. *See* 63 Fed. Reg. 5106 (Jan. 30, 1998); 42 C.F.R. § 413.106(c)(5). Although the Secretary has attempted

9

to claim that this alteration was only a clarification of existing policy, the effective date of the change was April 10, 1998 – subsequent to the periods at issue here (FYEs June 30, 1996 and June 30, 1997). *See* 63 Fed. Reg. 15,319 (Mar. 31, 1998).

26.     The Secretary's "interpretation" that the Guidelines may be applied to employment relationships for periods before April 10, 1998, has not been adopted and utilized by all Medicare fiscal intermediaries. As such, the Secretary's "interpretation" has not been applied uniformly or consistently. Indeed, the Secretary himself is not applying his "interpretation" uniformly or consistently. For example, the "interpretation" is not being applied to providers in: (a) states in the Eighth Circuit (Arkansas, Iowa, Minnesota, Missouri, Nebraska, North Dakota, and South Dakota) because the Eighth Circuit has ruled against the Secretary's position; (b) Wyoming (where the Federal District Court ruled against the Secretary's position); and (c) the Eastern District of California (where the Federal District Court ruled against the Secretary's position). *See In Home Health, Inc. v. Shalala,* 188 F.3d 1043 (8th Cir. 1999); *K&R Home Health Services, Inc. v. Thompson,* No. Civ. 5-00-2501/LKK/DAD (E.D. Cal. Nov. 9, 2001); *High Country Home Health, Inc, v. Shalala,* 84 F. Supp. 2d 1241 (D. Wy. 1999). It is unclear whether the Secretary is applying his "interpretation" in Colorado (where the Secretary settled a case on this issue on terms favorable to the provider prior to any court ruling) and the Eastern District of Pennsylvania (where the Secretary settled a case on this issue on terms favorable to the provider prior to any court ruling). *See All Care Home Health, Inc. v. Thompson,* C.A. No. 02-AP-25 (MJW) (D. Colo.) (Jul. 19, 2002 settlement); *Berks Visiting Nurse Ass'n v. Leavitt,* No. 04-CV-5567 (E.D. Pa.) (Oct. 19, 2005 settlement).

27.     The Guidelines in place from October 1, 1982, through April 9, 1998, were based on 1981 data with a trend factor to update the data for inflation. 48 Fed. Reg. 44,922 (Sept. 30,

1983); 63 Fed. Reg. 15,315 (Mar. 31, 1998). When the Secretary reissued the Guidelines in 1998 utilizing more recent data, they increased 49.8 percent over the Guidelines in effect just one year earlier -- a powerful indication that the Guidelines amounts during this period were insufficient and not a proper basis for any "reasonable" cost or "prudent buyer" analysis. Stated somewhat differently, for the 15½ years that the 1982 Guidelines were in effect, they underestimated PT cost increases by an average of more than 3.2 percent annually.

28.    Accordingly, during the periods at issue here, the reasonable cost principles established in 42 U.S.C. § 1395x(v)(1)(A) and 42 C.F.R. § 413.9 govern a provider's entitlement to Medicare payment for costs incurred by the provider in using employees to furnish PT services to patients.

B.    Medicare Claims and Appeals

29.    The Secretary contracts with outside organizations (usually the Blue Cross Association or an insurance company) to perform certain audit, administrative, and payment functions with respect to providers of services under the Medicare program.

30.    The Secretary has established separate processes for determining whether services furnished to beneficiaries are covered by Medicare and for determining a provider's reasonable costs of furnishing services.

31.    Regulations governing determinations of benefits covered by Medicare are codified in 42 C.F.R., part 405, subparts G and H. Pursuant to the regulations, an individual claim must be filed with the Medicare intermediary by or on behalf of a beneficiary after PT services have been furnished to the beneficiary by a home health agency. *See* 42 C.F.R. §§ 405.702, 405.704. The fiscal intermediary reviews these individual claims, ascertains whether the services furnished to the beneficiary are covered under Medicare, makes interim payment for

the claims, and issues a determination (known as the initial determination) to the beneficiary and, in most circumstances, to the provider of services. *Id.* The initial determination is final and binding unless the beneficiary or provider pursues administrative remedies or the intermediary revises the determination within a prescribed period after the date of the initial determination. *See* 42 C.F.R. §§ 405.708, 405.750.

32.    After the close of each fiscal year and for each of the years involved here, a provider files a cost report with its Medicare fiscal intermediary, which audits the cost report and issues a final determination of the provider's reasonable costs of services furnished to Medicare beneficiaries in a notice of program reimbursement ("NPR"). *See* 42 U.S.C. §§ 1395h and 1395oo(a)(1)(A)(i); 42 C.F.R. §§ 405.1803(a)(1) and 413.20; *Bethesda Hospital Ass'n v. Bowen*, 485 U.S. 399, 400-01 (1988).

33.    A provider that is dissatisfied with the intermediary's determination of its reasonable cost, or a group of providers that are dissatisfied with intermediary determinations involving a common issue regarding their reasonable costs, may appeal to the PRRB. 42 U.S.C. § 1395oo(a). The decision of the PRRB is final unless the Secretary (acting through the CMS Administrator) reverses, affirms, or modifies the Board's decision within 60 days after the provider is notified of the PRRB's decision. 42 U.S.C. § 1395oo(f)(1). A provider or group of providers that is dissatisfied with the final decision of the Board, or with an affirmance, reversal or modification by the Secretary (acting through the Administrator), may appeal to the United States District Court for the District of Columbia or to the United States District Court for the judicial district where the provider is located or, in the case of a group appeal, where the greatest number of providers in the group are located. 42 U.S.C. § 1395oo(f)(1).

V.    FACTS SPECIFIC TO THIS CASE

A.    Plaintiff's Employment Relationships

34.    During the periods at issue, Plaintiff employed physical therapists to furnish PT services to its patients. Plaintiff paid these employed physical therapists on a per-visit basis for the work they performed. It is undisputed that these individuals were employees of the Plaintiff - they were subjected to payroll withholdings, received fringe benefits, had federal taxes withheld, and received W-2s.

B.    Disallowance Of Plaintiff's PT Costs

35.    On August 31, 2000, the Intermediary issued a NPR for MGH's FYE June 30, 1996. In the accompanying audit adjustment reports, the Intermediary used the Guidelines to disallow substantial parts of the costs incurred by MGH to furnish PT services to its patients through the employed physical therapists. The disallowance for this period for PT costs resulted in a reduction of $22,904 in Medicare reimbursement to MGH.

36.    On September 11, 2000, the Intermediary issued a NPR for MGH's FYE June 30, 1997. In the accompanying audit adjustment reports, the Intermediary used the Guidelines to disallow substantial parts of the costs incurred by MGH to furnish PT services to its patients through the employed physical therapists. The disallowance for this period for PT costs resulted in a reduction of $3,022 in Medicare reimbursement to MGH.

37.    The Intermediary's disallowances for these periods were not based upon a determination that the PT services to MGH's patients were medically unnecessary or otherwise not covered by the Medicare program. The PT services furnished to the MGH's patients during these periods were subject to a separate claims review process for coverage determinations and were determined by the Intermediary to be medically necessary and covered.

38.    The disallowances of MGH's PT costs for these periods were based, instead, on the premise that MGH paid too much for the PT services rendered by employed physical therapists in accordance with physicians' care plans for their patients. The Intermediary, therefore, disallowed portions of MGH's PT costs in excess of the Guidelines, thereby assuming that: (a) the Guidelines were applicable to employment relationships; and (b) the amounts in the Guidelines were a lawful and accurate barometer of what reasonable costs should be.

C.    Administrative Proceedings

39.    MGH timely appealed the Intermediary's disallowances of its FYEs June 30, 1996, and June 30, 1997 costs, including the PT costs, to the PRRB pursuant to the appeals process established under 42 U.S.C. § 1395oo. The PRRB issued a unanimous decision on the record in MGH's favor on the Guidelines issue based upon the parties' written evidence and arguments. The PRRB's decision is dated June 1, 2006, and was received by Plaintiff on June 2, 2006.

40.    The PRRB concluded that the Intermediary's disallowances of PT costs using the Guidelines was improper under 42 U.S.C. § 1395x(v)(5)(A) because the Guidelines were limited under that provision to "under arrangement" relationships with outside contractors and do not apply to employee relationships. The Board further reasoned the Guidelines could not be substituted for a prudent buyer analysis and that, instead, intermediaries were required to determine whether a provider's costs are "substantially out of line" by comparing those costs to costs incurred by similarly situated providers. The Board also found that the 1998 amendment to the salary equivalency regulations could not be applied to prior cost reporting periods.

41.    The Deputy Administrator of CMS issued a decision dated July 11, 2006 reversing the PRRB decision. This was sent to MGH's representative by certified mail and letter

dated July 12, 2006, and was received by MGH's representative on July 14, 2006. The Deputy Administrator ruled that application of the Guidelines in this situation was not foreclosed by 42 U.S.C. § 1395x(v)(5)(A) and that PRM § 1403 was an appropriate vehicle for limiting such relationships. The Deputy Administrator's decision constitutes the final decision of the Secretary.

42.    MGH has exhausted all available administrative remedies and brings this action for judicial review pursuant to the provisions of 42 U.S.C. § 1395oo(f). This action is filed within 60 days of receipt of the Secretary's decision.

## VI.    ASSIGNMENT OF ERRORS

43.    The Secretary's final decision is contrary to the Medicare Act and implementing regulations, arbitrary and capricious, not based upon substantial evidence, and otherwise contrary to law for several reasons, including the following.

44.    The Secretary's decision upholding the application of the Guidelines to Plaintiff's PT costs for employees is arbitrary and capricious and violates the plain meaning and intent of 42 U.S.C. § 1395x(v)(5)(A) and 42 C.F.R. § 413.106 as it existed during the periods at issue.

45.    The Secretary's decision upholding the Intermediary's disallowances is an unlawful attempt to apply retroactively the terms of 42 C.F.R. § 413.106(c)(5) that were only effective April 10, 1998, and thereafter.

46.    The Secretary's decision upholding the Intermediary's disallowances of the Plaintiff's actual PT costs are also contrary to the plain meaning of the reasonable cost reimbursement provisions in 42 U.S.C. § 1395x(v)(1)(A) and the implementing regulations codified at 42 C.F.R. §§ 413.5 and 413.9.

47. As construed and applied by the Secretary, PRM § 1403 is invalid because: (a) it conflicts with 42 U.S.C. § 1395x(v)(1)(A) and (5)(A) and 42 C.F.R. §§ 413.9 and 413.106 as the latter existed during the periods at issue; and (b) it was not adopted in accordance with the notice and comment rulemaking procedures mandated by the APA, 5 U.S.C. § 553.

48. The Secretary's decision upholding the Intermediary's disallowances of Plaintiff's PT costs is arbitrary and capricious and not based upon substantial evidence because it did not require the Intermediary to base its determinations on a prudent buyer analysis demonstrating that Plaintiff's actual PT costs were substantially out of line with comparable costs incurred by comparable providers for comparable services.

49. The Secretary's decision upholding the Intermediary's disallowances of Plaintiff's actual PT costs is arbitrary and capricious and not based on substantial evidence because it assumes the validity of the Guidelines as a proxy for measuring reasonable costs.

50. The Secretary's decision upholding the use of the Guidelines in Plaintiff's case is arbitrary and capricious, not based on substantial evidence, and otherwise contrary to law because the Secretary has ignored the selective application of the Guidelines by intermediaries to similar situations.

51. The Secretary's decision upholding the use of the Guidelines in Plaintiff's case is arbitrary and capricious, not based on substantial evidence, and otherwise contrary to law because the Secretary himself is not applying the Guidelines uniformly but, instead, has chosen not to apply them in significant areas of the country, including areas where there is no controlling federal appellate court or federal district court decision on this issue.

52. The Secretary's decision in Plaintiff's case is without substantial justification.

## VII.   RELIEF REQUESTED

WHEREFORE, Plaintiff requests:

(1)    A declaration that the disallowances of Plaintiff's PT costs are invalid because they are inconsistent with 42 U.S.C. § 1395x(v)(5)(A) and 42 C.F.R. § 413.106 as it existed during the periods at issue;

(2)    A declaration that the disallowances of Plaintiff's PT costs are invalid because the disallowances conflict with the reasonable cost reimbursement principles established in 42 U.S.C. § 1395x(v)(1)(A) and 42 C.F.R. § 413.9;

(3)    A declaration that the disallowances of Plaintiff's PT costs are invalid because the disallowances are based on a manual provision that conflicts with 42 U.S.C. § 1395x(v)(5)(A) and 42 C.F.R. § 413.106 as it existed during the periods at issue and that was issued in contravention of the required notice and comment procedures of the APA;

(4)    A declaration that the disallowances of Plaintiff's PT costs are invalid because the disallowances are otherwise arbitrary and capricious, unsupported by substantial evidence, and otherwise contrary to law;

(5)    An order reversing the Secretary's decision to permit the disallowances of Plaintiff's PT costs and requiring the Secretary to make prompt payment to Plaintiff for the amounts disallowed, plus interest, in accordance with 42 U.S.C. § 1395oo(f)(2);

(6)    An order requiring the Secretary to pay the legal fees and costs of suit incurred by Plaintiff pursuant to 5 U.S.C. § 504(a); and

(7)     Such other relief as the Court may consider appropriate.

Respectfully submitted,

Harold G. Belkowitz
D.C. Bar No. 449800
Ober, Kaler, Grimes & Shriver
A Professional Corporation
1401 H Street, N.W., Fifth Floor
Washington, DC 20005-3324
(202) 408-8400
(202) 408-0640 facsimile

Carel T. Hedlund
Ober, Kaler, Grimes & Shriver
A Professional Corporation
120 E. Baltimore Street
Baltimore, Maryland 21202-1643
(410) 685-1120

Counsel for the Plaintiff

1839891.2